IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLORIA J. STURDIVANT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-2228-M |
| | § | |
| TARGET CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

### I. FACTUAL BACKGROUND

Defendant Target Corporation ("Target") owns and operates a national chain of retail stores. On October 25, 2003, Plaintiff Gloria J. Sturdivant visited Target's Store # 1775 to exchange an item she had previously purchased. After waiting in line for several minutes, Sturdivant walked up to the customer service counter. As she neared the counter, Sturdivant slipped on a small puddle of water and fell. This incident forms the basis of Sturdivant's case against Target.

Target employees Jeff White and John McDonough reviewed the recordings from the store's video cameras in an attempt to determine the source of the water that caused Sturdivant's fall. Their review of the video recordings disclosed only one potential source: a child holding a "sippy" cup had been in the area approximately five minutes before Sturdivant's fall. White and McDonough could not determine if the child had spilled any liquid. McDonough then prepared a videotape copy, approximately 35 seconds in length, showing the incident from one camera

angle.[1]  The record does not disclose when that videotape copy was made.  Within 45 days after Sturdivant fell, Target deleted all of the original video recordings, including the original video of Studivant's fall and the video showing the child with a sippy cup.  The videotape copy prepared by McDonough is the only extant video evidence of Sturdivant's fall.

Sturdivant filed suit in Dallas County District Court on October 20, 2005.  Target removed the case to this Court on November 14, 2005 and filed a Motion for Summary Judgment on June 1, 2006.

## II. ANALYSIS

*A. Conflict Between Federal Rules and State Law*

As an initial matter, the Court notes a distinction between the Federal Rules of Civil Procedure and Texas' law of premises liability with respect to a nonmovant's burden of proof on a summary judgment motion like that asserted here.  This Court concludes that the Federal Rules prevail and that to defeat Target's motion, Sturdivant, the nonmovant, need only put forward evidence to create a genuine issue of material fact.

Under Texas law, a property owner owes to another invited onto his property a duty to protect him from dangerous conditions that are known or reasonably discoverable.  *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000).  A plaintiff asserting a claim for premises liability must show, *inter alia*, that the property owner had actual or constructive notice of the dangerous condition.  *Id.* at 99.  A plaintiff proves constructive notice by establishing "that it is *more likely than not* that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition."  *Wal-Mart Stores, Inc. v. Gonzalez*, 968

---

[1] The record does not disclose whether the incident was visible from more than one camera angle.  In any event, McDonough preserved only one camera view.

S.W.2d 934, 936 (Tex. 1998) (emphasis added).  Texas courts apply the "more likely than not" standard when deciding or reviewing pre- and post-trial motions for judgment as a matter of law. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).  "More likely than not" is the classic restatement of the preponderance of the evidence standard used by juries to decide civil cases, a standard that necessarily implicates the weighing of evidence.

State law thus invites judges to weigh the evidence in premises liability cases to determine if the property owner had constructive notice of the dangerous condition.  In contrast, federal law does not permit the court to weigh evidence in evaluating motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Given the apparent distinction between federal procedure and Texas law, the Court invited the parties to provide supplemental briefs on the appropriate standard of review.

Defendant urges that this Court must apply federal, and not state, standards.  Defendant urges this Court to follow the example set by the Fifth Circuit in *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887 (2000).  In *Threlkeld*, the Fifth Circuit seemed to conclude that the sufficiency of the evidence should be evaluated using federal standards, but the court twice cited the "more likely than not" standard, without commenting on the apparent conflict between that standard and the approach taken by the Federal Rules of Civil Procedure.  *See id.* at 892–893.

Since the Fifth Circuit did not explain its application of the more likely than not standard and since the Court has not been directed to, and is unaware of, other germane federal cases on this subject, the Court considers the issue to be one of first impression.

The issue before the Court is whether, in deciding the Defendant's Motion for Summary Judgment,  the Court should weigh the Plaintiff's evidence on constructive notice, as a state court would, or whether the Court should merely evaluate the evidence to determine whether there is

sufficient evidence to create a genuine issue of material fact. Defendant agrees that the federal rule, which is a more onerous burden for the Defendant, applies here. Nevertheless, for clarity, the Court will review the issue under the *Erie* doctrine. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The first consideration is whether application of (or refusal to apply) the state law would be "outcome determinative." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The Supreme Court's application of the "outcome determinative" test is "guided by 'the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws.'" *Id.* at 428 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). In most cases, the *Erie* doctrine's goal is to prevent an outcome in federal court that leads to a substantially different result than that which would have occurred in state court. *Id.* at 431. To achieve this goal, the "outcome determinative" test would suggest that this Court should apply Texas law.

However, that initial suggestion does not conclude the analysis. The Supreme Court has directed that the "outcome-determinative" test is "an insufficient guide in cases presenting countervailing federal interests." *Gasperini* 518 U.S. at 432. The Supreme Court described "countervailing federal interests" in this way:

> An essential characteristic of [the federal] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.

*Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537 (1958). In federal court, it is beyond questioning that disputed issues of fact are to be decided by the jury. U.S. CONST. amend. VII. For this reason, the Court is not to weigh evidence when considering a motion for summary judgment. *Reeves*, 530 U.S. at 150. If this Court were to apply state law in this case, it would arrogate to itself the weighing of plaintiff's evidence on the issue of constructive notice. Because

the weighing of evidence is for the jury, the approach taken by Texas law would violate the ordinary allocation of decision-making power between the judge and the jury.  The Court will thus apply federal standards in evaluating the evidence on this Motion for Summary Judgment.

### B.  Federal Summary Judgment Standard

Summary judgment is warranted when the facts as shown in the pleadings, affidavits, and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Pourgholam v. Advanced Telemarketing Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2–3 (N.D. Tex. June 9, 2004).  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25).  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  FED. R. CIV. P. 56(e).  The Court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses," and disregarding the evidence

favorable to the movant that the jury would not be required to believe.  *Reeves*, 530 U.S. at 152.  Further, "the court must draw all justifiable inferences in favor of the nonmovant."  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993)).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625.  "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).  However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts.  *Lynch*, 140 F.3d at 625.

## C.  Texas Premises Liability Law

Under Texas law, a property owner owes to those persons invited onto the property a duty to protect them from dangerous conditions that are known or reasonably discoverable.  *CMH Homes*, 15 S.W.3d at 101.  A plaintiff asserting a claim for premises liability must prove:

(1) Actual or constructive knowledge of a condition on the premises by the owner or occupier;
(2) That the condition posed an unreasonable risk of harm;
(3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and
(4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*Id.* at 99.  Target asserts that Sturdivant cannot prove the first element—that Target had actual or constructive knowledge of the water that caused her to slip and fall—and that therefore Target is entitled to summary judgment.

To show that Target had actual or constructive knowledge of the water on the floor, Sturdivant would have to show at trial: (1) that Target placed the water on the floor; (2) that Target actually knew that the water was on the floor; *or* (3) that the water was on the floor long enough to give Target a reasonable opportunity to discover and remove it. *Keetch v. Kroger*, 845 S.W.2d 262, 265 (Tex. 1992). Sturdivant concedes that she has no evidence as to the first two theories, but she argues that there is sufficient evidence to support a finding that Target had constructive knowledge of the water's presence under the third theory of proving knowledge.

For a plaintiff to succeed in establishing the property owner's constructive knowledge of a hazardous condition, the plaintiff must show that the hazardous condition existed for some definite length of time. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815 (2002). Texas adopted this "time-notice" rule because "temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Id.* at 816.

### D.  *Sufficiency of Evidence*

Target asserts that there is no evidence as to the length of time the water lay on the floor prior to Sturdivant's fall. Target points to Sturdivant's deposition testimony that she did not see anyone spill water while she stood in line, and that she did not know how long the water had been on the floor. (Sturdivant Depo. at 82:23–83:8.) If there were no further evidence, Target's position might have merit.

But in this case there is further evidence regarding the water's provenance. Target employees White and McDonough reviewed all of the store's surveillance videos and identified only a single potential source of the water: a child holding a sippy cup was in the area of Sturdivant's fall approximately five minutes beforehand. White and McDonough were unable to determine whether the child spilled any water, and Target subsequently deleted the video.

Although White did not believe the video was sufficiently important to save, he did tell the claims manager handling Sturdivant's case about the child with a sippy cup. Thus, Sturdivant produced evidence as to a possible source of the water, and hence a possible length of time that the hazardous condition existed: five minutes.

Target points to the condition of the water as evidence that it was on the floor for only a very short period of time. Testimony from both Sturdivant and White indicates that the water was clear with no track marks or footprints. (Sturdivant Depo. at 99:13-19; White Depo. at 73:9-18.)

Texas state courts are skeptical about using the visual appearance of a hazardous condition to infer the length of time the condition existed. The Texas Supreme Court, considering evidence of dirt, footprints, and cart tracks in spilled macaroni, wrote that the "evidence can no more support the inference that [the macaroni] accumulated dirt over a long period of time than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Gonzalez*, 968 S.W.2d at 937. The Court is wary of relying on state court decisions that were decided under a different (and more onerous) legal standard, but the Court agrees that the clear condition of the water is at best only weak circumstantial evidence that the spill was fresh. The water's condition was, however, consistent with the possibility that it spilled out of the child's sippy cup five minutes beforehand.

More significant than any inferences to be drawn from the water's condition is the simple fact that the water's condition made it exceptionally difficult to see. White testified that he could only see the water by getting on the floor, and that he was unable to take any photographs in which the water was visible. (White Depo. at 34:21-24, 58:21-24, 59:1-4, 74:2-4.) Sturdivant

stated that she was unable to see the water prior to her fall because the water "looked like the floor." (Sturdivant Depo. at 89:23-25.) The parties do not dispute that the water was very difficult to see from any angle, and effectively invisible to a standing person.

Construing this evidence in favor of Sturdivant, the Court assumes, without deciding, that Sturdivant produced sufficient evidence from which a jury could conclude that the water that caused Sturdivant's fall spilled from a child's sippy cup and was present on the floor for five minutes before Sturdivant's fall. While Sturdivant may have met her burden to produce evidence of the length of time the water was on the floor, the analysis does not end there. Sturdivant must produce sufficient evidence to create a triable issue as to whether "the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Gonzalez*, 968 S.W.2d at 935. Here, Sturdivant's case fails. Given the low visibility of the water and the evidence that the water was on the floor for five minutes, the Court concludes as a matter of law that Target did not have a reasonable opportunity to discover the water.

Considering all of the evidence in the light most favorable to Sturdivant, the Court finds that Sturdivant has failed to produce sufficient evidence to create a genuine issue of material fact as to Target's constructive notice of the water that caused Sturdivant's fall. Phrased differently, no reasonable jury could conclude that Target failed to exercise reasonable care by failing to discover and clean up a small spill of clear water—water that was all but invisible—within five minutes. To impose on Target a duty to remedy hazardous conditions that are not detectable through the ordinary use of human faculties would make Target a general insurer of its customers' safety, a position that Texas courts have emphatically denounced. *See Reece*, 81 S.W.3d at 816. Because Sturdivant has failed to produce evidence upon which the jury could find in her favor, summary judgment for Target is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety.

**SO ORDERED.**

**DATED:** November 30, 2006.

_____
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**